**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

A BRIGHTER DAY, INC.; ALONZO
SMITH; KIA SMITH,

     Plaintiffs - Appellees,

v.

MICHELLE BARNES, in her official
capacity as Executive Director of the
Colorado Department of Human Services;[*]
SUSAN TUCKER, individually and in her
official capacity as a 24-HR Monitoring
Specialist for the Colorado Department of
Human Services; LAURIE BURNEY,
individually and in her official capacity as
Licensing Monitoring Supervisor and
Residential and CPA Services Program
Supervisor for the Colorado Department of
Human Services,

     Defendants - Appellants,

and

DENNIS DESPARROIS, individually and
in his official capacity as Placement
Services Manager for the Colorado
Department of Human Services,

     Defendant.
_____

No. 20-1054
(D.C. No. 1:19-CV-00276-SKC)
(D. Colo.)

---

    [*] In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Michelle Barnes is substituted for Reggie Bicha as the appellant in this
action.

## ORDER AND JUDGMENT[**]

_____

Before **MATHESON**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **PHILLIPS**, Circuit Judge.

_____

The district court denied the Defendant's Rule 12(b)(6) motion seeking among other things dismissal on qualified-immunity grounds of Plaintiffs-Appellees' (Plaintiffs) claims (1) under 42 U.S.C. § 1983 premised on racial discrimination under the Equal Protection Clause and 42 U.S.C. § 1981; and (2) under 42 U.S.C. § 1985 for conspiracy to discriminate on racial grounds. Plaintiffs contest our jurisdiction to consider the appeal and argue that the Defendants-Appellants (Defendants) failed to preserve the qualified-immunity argument in the district court. Though the parties raise additional issues in the event we decide that Defendants have preserved the qualified-immunity argument, we agree with Plaintiffs that we lack jurisdiction to hear Defendant Michelle Barnes's appeal. We also agree that the qualified-immunity argument is unpreserved and further that Defendants Susan Tucker and Laurie Burney have failed to argue plain error to their forfeited argument. We affirm.

_____

[**] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

**I.  Factual Background**[1]

Alonzo and Kia Smith, who are African Americans, owned and operated A Brighter Day from February 2012 through February 2017. A Brighter Day was a Colorado-licensed child-placement agency responsible for arranging placement in "foster care, treatment and/or adoption."[2] Though A Brighter Day received positive reviews and annual license renewals from 2012 to 2015, things began to change in 2016. Plaintiffs allege that Tucker and Burney, white Colorado Department of Human Services (Department) employees, orchestrated a racially motivated campaign to deny them another annual license renewal.

Allegedly, Burney and Tucker began their plan in February 2016 when Burney, a Department supervisor, ordered that Tucker, a Department employee, take over monitoring A Brighter Day. The employee Tucker replaced didn't know why the replacement happened. In fact, she opposed the change and told the Smiths to "watch their back[s]" with Tucker. Appellants' App. at 12.

---

[1] We derive the factual background from the Complaint allegations. *Cf. Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) ("In reviewing a motion to dismiss, we accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." (citation omitted)).

[2] *Child Welfare Placement Services*, Colorado Department of Human Services, https://www.colorado.gov/pacific/cdhs/child-welfare-placement-services (last visited Apr. 16, 2021).

Over the next year, Burney and Tucker conspired to report Plaintiffs for fabricated regulatory violations. Tucker inspected A Brighter Day nearly weekly, recorded invented violations, and reopened previous evaluation reports. In addition, she falsely accused Plaintiffs of misusing the public money that counties provide child-placement agencies to pay foster parents, and she circulated unsupported accusations in Colorado's monitoring department to support her stories and to denigrate Plaintiffs.

Burney also took other steps to interfere with A Brighter Day. The Smiths had planned to expand A Brighter Day's network to include new foster and group homes by the fall of 2016. When the Smiths faced delays in obtaining license approvals for these homes, Burney instructed a Department licensing coordinator to tell Plaintiffs that "quality assurance issues" were causing the delays. *Id.* at 12. Burney used this unofficial quality-assurance practice to impede Plaintiffs' growth. She had already decided against renewing Plaintiffs' license renewals by the time the delays were resolved. Additionally, Burney instructed Department staff not to communicate with Plaintiffs after they learned that their license wouldn't be renewed. Then, she permitted the Department to cancel (without rescheduling) several meetings planned to discuss resolving Plaintiffs' alleged violations.

On February 8, 2017, the Department officially denied another years' license renewal. Though the Department had never taken adverse action against A Brighter Day, it did so based on supposedly newfound violations dating from 2012 to 2017. The Department also deviated from normal procedures, by not placing A Brighter Day on a probationary status before nonrenewal. Instead, the Department sent A Brighter Day "a

4

cease and desist letter" and threatened a $500-per-occurrence fine if the Smiths

"attempted to contact any" of their foster homes. *Id.* at 15.

In addition, the Department sent notice of A Brighter Day's nonrenewal to all the

counties and all but one of the foster homes working with it so they could transition to

new child-placement agencies. The sole foster home left unnotified was The Wright Way,

which the Smiths also owned and operated. The Wright Way wasn't notified until A

Brighter Day was. On that day, county caseworkers told The Wright Way that they would

retrieve its foster children from school and take them to another care provider. All this led

to the abrupt closures of A Brighter Day and The Wright Way.

Acting under Colorado administrative procedures, Plaintiffs appealed the

nonrenewal to an administrative law judge (ALJ). The ALJ recommended reinstatement

of the license, finding that the violation reports were "unreliable as independent or

substantial evidence." *Id.* at 17. For instance, the ALJ found that Plaintiffs had in fact

overpaid foster homes by twice the amount that the Department claimed Plaintiffs had

underpaid them. The ALJ also concluded that the Department had accused Plaintiffs of

violating non-existent rules and reported them for conduct that didn't violate any rules.

The Department filed an administrative appeal challenging this decision. The

Department Office of Appeals reversed the ALJ's ruling, concluding that the Smiths

hadn't shown entitlement to reinstatement of the license.[3] A Brighter Day then sought

---

[3] The facts in this sentence and the next aren't from the Complaint. Defendants
have filed three motions requesting that we take judicial notice of these facts. Plaintiffs
oppose these requests because the findings from the Colorado licensing proceedings are

judicial review in a Colorado state court, though the court dismissed the case after A Brighter Day failed to file an opening brief.

In contrast to the Department's treatment of Plaintiffs, the Department has permitted white-owned-and-operated child-placement agencies to continue operating "[d]espite numerous, repeated, verifiable and very serious [rule] violations." *Id.* at 19. One such agency, Maple Star Colorado, has been permitted to operate despite a "lengthy and recurring list of regulatory violations and critical incidents, including sexual abuse of children in foster homes" and Department instructions to "improve its foster-home quality studies, health and safety inspections, and background checks." *Id.* And another agency, Kids Crossing, retains its license despite its "long list of regulatory violations," "child deaths and serious allegations of child abuse." *Id.*

---

irrelevant to the federal discrimination claims and because Defendants haven't argued on appeal, as they did below, "that the state proceedings should take precedence over the Smiths' claims," Appellees' Response to Second Motion for Request to Take Jud. Notice of State Ct. Pleadings at 7–8; *see* Appellees' Response to Third Motion for Request to Take Jud. Notice of State Ct. Pleadings at 2.

Though we agree with Plaintiffs in part, we take judicial notice of the fact that these administrative proceedings occurred. In doing so, we don't accept the administrative or judicial findings as facts. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." (citations omitted)); *The Est. of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." (internal quotation marks and citation omitted)).

## II.    Procedural Background

Plaintiffs sued Defendants (1) under 42 U.S.C. § 1983, for racial discrimination violating the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1981, and (2) under 42 U.S.C. § 1985, for conspiracy to racially discriminate.[4] Defendants moved to dismiss these claims primarily for insufficiency of the allegations. The court rejected this and permitted these claims to proceed. In a footnote, the district court also rejected a "woefully underdeveloped" qualified-immunity defense. *Id.* at 184 n.5. On appeal, Defendants ask that we reverse denial of qualified immunity from the racial-discrimination claims. We review under 28 U.S.C. § 1291.

## DISCUSSION

## I.    Jurisdiction

Before reaching forfeiture, we must address Plaintiffs' jurisdictional arguments. *See In re Franklin Sav. Corp.*, 385 F.3d 1279, 1286 (10th Cir. 2004) ("Jurisdictional issues must be addressed first and, if they are resolved against jurisdiction, the case is at an end." (citation omitted)). Denials of qualified immunity are appealable final orders. *See Keith v. Koerner*, 707 F.3d 1185, 1187 (10th Cir. 2013) ("The denial of qualified immunity is an appealable final order . . . ." (citation omitted)). But Plaintiffs contend that (1) because Barnes was sued in her official capacity, she can't appeal the district-court's qualified-immunity decision, and (2) that Tucker and Burney have challenged the

---

[4] Plaintiffs also sued Defendants for due-process violations. The district court dismissed these claims without prejudice. They aren't at issue on appeal.

7

sufficiency of the allegations, which they contend isn't reviewable on interlocutory appeal, even from denial of qualified immunity.

On the first point, Plaintiffs are correct. Because Barnes was sued in her official capacity, she can't invoke qualified immunity. *Cox v. Glanz*, 800 F.3d 1231, 1239 n.1 (10th Cir. 2015) ("The defense of qualified immunity is available only in suits against officials sued in their personal capacities, not in suits against . . . officials sued in their official capacities." (ellipsis in original) (internal quotation marks and citations omitted)). Barnes can't appeal the district court's otherwise nonappealable denial of the Rule 12(b)(6) motion. 28 U.S.C. § 1291; *Cox*, 800 F.3d at 1255. We dismiss her challenge for lack of jurisdiction.

On the second point, Plaintiffs fall short. Contrary to Plaintiffs' contentions, circuit courts have jurisdiction to review the sufficiency of the allegations in interlocutory appeals from denials of qualified immunity.[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 673–75 (2009) (holding that the sufficiency of the allegations is a legal question so appellate courts have jurisdiction to consider it on appeal from denial of qualified immunity). But

---

[5] Plaintiffs cite no authority to the contrary. Their cited cases nearly all predate *Iqbal* or arise in a different context, namely, on summary judgment arguing fact determinations. *See* Appellees' Resp. Br. at 4–7 (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996) (summary judgment); *Castillo v. Day*, 790 F.3d 1013 (10th Cir. 2015) (summary judgment); *Leatherwood v. Welker*, 757 F.3d 1115 (10th Cir. 2014) (summary judgment); *Cardenas v. Fisher*, 307 F. App'x 122 (10th Cir. 2009) (unpublished) (pre-*Iqbal*); *Weise v. Casper*, 507 F.3d 1260 (10th Cir. 2007) (pre-*Iqbal*)). Plaintiffs' one remaining case supports our conclusion. *See Apodaca v. Raemisch*, 864 F.3d 1071, 1075 (10th Cir. 2017) (explaining that "[t]he collateral-order doctrine is triggered only if the appeal turns on a purely legal dispute" and that qualified-immunity decisions arising on motions to dismiss don't involve factual disputes (citations, internal quotation marks, and footnote omitted)).

8

Plaintiffs argue a different point too—that in the district court Tucker and Burney challenged merely the sufficiency of the allegations and didn't raise qualified immunity against the racial-discrimination claims. Our jurisdiction, though, "is based on district courts' '*decisions*,' not on the particular arguments parties make in their briefs below." *Montoya v. Vigil*, 898 F.3d 1056, 1063 (10th Cir. 2018) (quoting 28 U.S.C. § 1291). When, as here, the district court has ruled on a qualified-immunity defense, we've jurisdiction to review that ruling. *Id.* at 1063–64. As part of that review, we can consider whether Tucker and Burney asserted and preserved a qualified-immunity defense on the ground asserted on appeal, or whether they've forfeited that issue. If they've forfeited that issue, we can consider their plain-error argument on appeal, if made.

## II.    Forfeiture

Plaintiffs argue that, below, Tucker and Burney neither raised nor sufficiently developed a qualified-immunity defense against the racial-discrimination claims. We agree and affirm without addressing the merits.

"[I]f the theory a party urges on appeal simply wasn't raised before the district court, we usually hold it forfeited." *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1271 (10th Cir. 2019) (citation and alteration omitted). We generally don't address "bald-faced new issue[s]," *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721–22 (10th Cir. 1993), or "arguments raised in the [d]istrict [c]ourt in a perfunctory and underdeveloped manner," *Rumsey Land Co., LLC*, 944 F.3d at 1271 (citation omitted); *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (determining that claimant's argument was unpreserved because she "failed to present any developed argumentation" to the district court);

9

*Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007) (explaining that "vague and ambiguous presentation of a theory before the trial court" doesn't preserve "that theory as an appellate issue" (citations and internal quotation marks omitted)); *Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1234 (10th Cir. 1997) (rejecting appellant's argument on appeal as inadequately preserved where a "perfunctory" paragraph of argument in the district court became ten pages of argument on appeal). Recently, we declined to reach the merits on appeal of an underdeveloped assertion of qualified immunity. *Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 590 (10th Cir. 2020) (unpublished).

This rule may not apply "when the district court explicitly considers and resolves an issue of law on the merits." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019). In that circumstance, "the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court." *Id.* at 991–92 (citation omitted). "This is because appellate courts can reach issues that were either pressed by the appellant before, or passed upon by, the lower court." *Id.* at 992 (citation and internal quotation marks omitted). "A court passes upon an issue when it applies the relevant law to the relevant facts." *Id.* (citation and internal quotation marks omitted).

Tucker and Burney face a fundamental problem. In scantly addressing qualified immunity in the district court, they did so not against the Plaintiffs' racial-discrimination claims. The Defendants' Motion to Dismiss contains a section on qualified immunity, but that section focuses on due process. Tucker and Burney state that "[a]lthough Plaintiffs

10

style their Section 1981 and 1983 claims as race discrimination claims, their factual allegations related to these claims focus on alleged due process violations attendant to the licensing investigation and renewal process." Appellant's App. at 97. Tucker and Burney conclude the section as follows: "Plaintiffs cannot identify any clearly established legal authority in support of their *substantive or procedural due process* claims." Appellant's App. at 99–100 (emphasis added). So Tucker and Burney haven't preserved a qualified-immunity defense against the Plaintiffs' racial-discrimination claims.

In addition, the qualified-immunity argument was underdeveloped. It contains mostly general legal statements and empty platitudes. *See Tillmon*, 817 F. App'x at 589–90 (declining to reach qualified immunity when defendants' "argument consisted of a single paragraph briefly discussing the law of qualified immunity"); *Tele-Communications, Inc.*, 104 F.3d at 1233–34 (finding an argument underdeveloped when "[o]nly the final three sentences in [the relevant] paragraph ma[d]e any argument whatsoever").

The district court noted that Tucker and Burney "argue that the contours of any right were not clearly established during the time period in question." Appellant's App. at 184 n.5. But the court declared that "[t]his one-sentence argument is woefully underdeveloped." *Id.* The court further commented that "Defendants also contend that Tucker conducted lawful investigations and the Department lawfully enforced its standards in denying the renewal. These arguments are conclusory and inherently factual in nature, and therefore, aren't appropriate considerations in deciding a motion to dismiss." *Id.* Though the court noted that it "furthermore" wasn't "persuaded that

11

Defendants are entitled to qualified immunity," this additional response doesn't invite our further consideration.[6] *Id.*; *cf. GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 813 (D.C. Cir. 2012) (reasoning that "[a] district court does not open the door to further consideration of a forfeited claim by giving an alternative, merits-based reason for rejecting it" after concluding that the argument was waived (citation omitted)).[7] Qualified immunity was neither pressed nor passed upon such that we'll review the merits.

Tucker and Burney argue that if we rule their qualified-immunity defense was forfeited, we should exercise our "discretion to overlook potential forfeiture and should do so here because the issue raised is purely a legal one." Reply Br. at 13. But we've written that "[t]o urge reversal of an issue that was forfeited in district court, an appellant must argue plain error." *Rumsey Land Co., LLC*, 944 F.3d at 1271 (citation omitted) ("If an appellant does not explain how its forfeited arguments survive the plain error standard, it effectively waives those arguments on appeal." (citations omitted)). Tucker and Burney haven't argued plain error, so they've waived this argument.

---

[6] Tucker and Burney argue that the district court denying qualified immunity preserved the issue for appeal. But the cited cases don't require that we address qualified immunity after a ruling below that argument on it was "woefully underdeveloped." Appellant's App. at 184 n.5; *see Cox*, 800 F.3d at 1240–45; *Montoya*, 898 F.3d at 1063–64.

[7] Moreover, "even though review may be *permitted* [when an issue is passed upon], the ultimate decision about whether to hear a claim when it was not raised before the lower tribunal is one that remains within the discretion of the appellate court." *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (citation, internal quotation marks, and alteration omitted).

**CONCLUSION**

For the foregoing reasons, we dismiss Barnes' appeal for lack of appellate jurisdiction and affirm the district court's decision as to Tucker and Burney.

Entered for the Court

Gregory A. Phillips
Circuit Judge